THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND OF FAIRVIEW HEIGHTS, Plaintiff-Appellant, *v.* RICHARD L. MATHIAS, Director of Insurance, *et al.*, Defendants-Appellees.

Fifth District   No. 80-103

Opinion filed January 6, 1981.

Robert E. Becker, of Kassly, Bone, Becker, Dix & Tillery, P. C., of Belleville, and Michael J. Reagan, law student, for appellant.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiff Board of Trustees of the Police Pension Fund of Fairview

Heights (hereinafter the board) appeals from the judgment of the Circuit Court of St. Clair County, which affirmed the order of the Director of Insurance in an administrative review proceeding. The Director of Insurance had determined that the board violated sections 3—109 and 3—124 of the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, pars. 3—109 and 3—124) by failing to require a Fairview Heights police officer, as a prerequisite to his current inclusion in the police pension fund, to repay $3,000 of pension contributions refunded to the officer at the end of his earlier period of employment. The pension fund involved is the policemen's pension fund for municipalities of 500,000 and under, provided for in article 3 of the Illinois Pension Code (Ill. Rev. Stat. 1979, ch. 108½, par. 3—101 et seq.).

The parties stipulated that Patrick Prindable was formerly a member of the Fairview Heights police force for about 3 years. After resigning on November 15, 1975, he was refunded pension contributions of approximately $3,000 pursuant to section 3—124 of the Illinois Pension Code.

Subsequently, Prindable sought to rejoin the force. He requested that the board waive the written and oral testing required of new officers. The board refused. Prindable passed the tests and was placed on an eligibility list.

On June 16, 1977, he was hired as a probationary patrolman. He also requested that the board waive the 18-month probationary period for new patrolmen, but the board refused. Prindable received the starting salary of a probationary patrolman, which was substantially less than he would have received had he been reinstated at his previous grade.

The parties also stipulated that Prindable did not want pension credit for his earlier 3 years on the force. He had not repaid and would not repay the money he withdrew when he resigned. He sought readmission to the pension fund as a new patrolman, with the understanding that to be eligible for a service pension he would have to serve 20 years from June 16, 1977. The board did not enforce repayment of Prindable's refunded contributions and included him as a member of the pension fund.

The Director of Insurance found the board in violation of sections 3—109 and 3—124 of the pension code and ordered that the board immediately either enforce repayment of Prindable's refund or cease including him as a member of the pension fund for so long as the board failed to enforce repayment.

Sections 3—109 and 3—124 of the Illinois Pension Code provide in pertinent part as follows:

"§3—109. Persons excluded. This Article shall not apply to the following persons: * * * (b) Any policeman who fails to pay the salary payments or deductions hereinafter defined, computed (1) in the case of funds established prior to August 5, 1963, from the date the municipality established the fund or the date of a po-

liceman's first appointment (including an appointment on probation), whichever is later, or (2) in the case of funds hereafter established, from the date, as determined from the statistics or census provided in Section 3—103, the municipality became subject to this Article by attaining the minimum population or by referendum, or the date of a policeman's first appointment (including an appointment on probation), whichever is later, and continuing during his entire service as a policeman. A policeman who is reappointed shall, before being declared eligible to participate in the pension fund, repay to the fund as required by Section 3—124 any refund received pursuant to said Section 3—124." Ill. Rev. Stat. 1979, ch. 108½, par. 3—109.

"§3—124. Refund. If a policeman is separated from the police service after June 30, 1953, but before he has served 20 years, all contributions made by him to the police pension fund shall, upon his request, be refunded to him.

Acceptance of a refund shall bar the policeman and his dependents from any further participation in the benefits of this Article subject to restoration upon re-entry into service and repayment to the fund of the refund plus interest at 2% per annum from the date of refund until the date of repayment." Ill. Rev. Stat. 1979, ch. 108½, par. 3—124.

The board contends that Prindable was not "reappointed" within the meaning of section 3—109 because he did not return to the same rank, pay grade, and seniority status in the police department, but rather started anew by undergoing the testing procedures, waiting period while on the eligibility list, and serving probationary status following appointment. The board contends that section 3—124 provides that the acceptance of a refund of pension contributions upon separation merely bars a police officer from claiming his former creditable service for pension purposes upon re-entry, unless he repays the amount refunded plus 2 percent interest from the date of the refund.

The board cites statutes concerning 17 other governmental retirement, pension, and annuity systems that appear to provide, with varying degrees of clarity, that an employee's failure to repay a refund only precludes credit for prior service in determining eligibility for benefits. (Ill. Rev. Stat. 1979, ch. 108½, pars. 2—123, 4—116, 5—164, 7—169, 8—167, 9—163, 10—101, 11—163, 12—145, 13—165, 14—130, 15—154, 16—151, 17—126, 18—129, 19—105, 19—215.) The board concedes that one system, the fireman's annuity and benefit fund for cities over 500,000, appears to require that a fireman who receives a refund must repay it upon re-entry into the service in order to be eligible for any benefits. Ill. Rev. Stat. 1979, ch. 108½, par. 6—159.

While recognizing that the State's pension law is to be given a liberal

construction to effect its purpose, the Director of Insurance points out that our primary pursuit must be to determine the meaning of the provisions actually involved here. The Director contends that the board's interpretation of the word "reappointment" in section 3—109 is artificially narrow, and that reappointment simply means rehiring, whether at an entry level position, as in this case, or at a previously attained rank and seniority. The Director further contends that the plain meaning of section 3—124 is that a policeman who fails to repay a refund with interest upon re-entry into the service is absolutely barred from inclusion in the pension fund and eligibility for benefits.

We agree that the resolution of this case depends on a reading of the statutes in issue; however, if an ambiguity should appear, then we must consider the purpose and effect of the enactment. Section 3—124 provides that a policeman's acceptance of a refund bars "any further participation in the benefits" of Article 3 *subject to restoration* upon re-entry into service and repayment to the fund of the refund plus interest. That is, any further or continuing eligibility for benefits that would otherwise be retained after separation is forfeited by acceptance of a refund, subject to the exception that a policeman's pension rights, as they existed at the time of separation, may be *restored* upon re-entry by repayment of the refund plus interest. Section 3—109 provides that a policeman is excluded from the pension fund if he fails to contribute the required salary deductions or payments from the date of his first appointment in a municipality with a pre-existing pension fund. The section further provides that, in the case of a reappointed policeman, repayment "as required by Section 3—124" of any refund is a prerequisite to eligibility.

We do not believe that the provision of section 3—124 for "restoration" of participation in pension benefits can be read to require that a rehired policeman repay a pension refund as a prerequisite to starting anew in the contribution of salary deductions and accrual of pension rights. Section 3—109, insofar as it concerns reappointed policemen, merely incorporates the provision of section 3—124 that restoration of any previously earned pension rights upon rehiring be contingent upon repayment of the refund with interest.

It was undisputed that Officer Prindable, from the time of his rehiring as a probationary patrolman, was within the definition of "policeman" under section 3—106 and that he applied for admission to the pension fund. (Ill. Rev. Stat. 1979, ch. 108½, par. 3—106.) He was not subject to exclusion from the pension fund under the provisions relied on by the Director of Insurance or any other provision of article 3. Therefore, the Director and the trial court erred in determining that the board was required to enforce repayment of Prindable's refund or exclude him from the pension fund.

To clarify, our decision does not rest on construction of the word "reappointed" in section 3—109 or any factual considerations of rank or seniority or procedures upon rehiring. We simply hold that article 3 of the Illinois Pension Code allows a rehired policeman to be included in the pension fund upon rehiring in the same manner as an entirely new probationary patrolman, where the rehired policeman does not repay his pension refund under section 3—124.

The Director of Insurance argues that this conclusion results in an inequity because a policeman is entitled to a pension after 20 years of creditable service (Ill. Rev. Stat. 1979, ch. 108½, par. 3—111), and section 3—110 includes all years served in the definition of "creditable service" (Ill. Rev. Stat. 1979, ch. 108½, par. 3—110). Thus, it is argued, if a rehired officer who does not repay a pension refund is allowed inclusion in the fund, section 3—110 will require the inequitable result that he be given pension credit for the time of service covered by the refund. However, this result is precisely what is prevented by the provision of section 3—124 that a rehired policeman will be restored to any prior pension rights only upon payment of his refund plus interest. Reading sections 3—110 and 3—124 together leads to the conclusion that where, as here, a rehired policeman does not repay his refund, he is entitled to creditable service only from the date of his rehiring.

It might also be argued that our decision will threaten the solvency of policemen's pension funds by allowing a rehired policeman to immediately regain eligibility for a disability pension (Ill. Rev. Stat. 1979, ch. 108½, pars. 3—114.1, 3—114.2) without repaying his refund. However, an entirely new policeman also becomes eligible for a disability pension upon hiring and inclusion in the pension fund, and we see no reason for treating a rehired officer differently. Also, excluding a rehired officer from the fund for so long as he does not repay a previous refund may be expected to ultimately result in a lower fund balance, because the rehired officer will be prevented from contributing to the fund throughout his service following rehiring. Finally, as the board contends, allowing a rehired officer to start anew in pension fund participation without repaying a prior refund may have the beneficial effect of facilitating the employment of qualified former police personnel.

The judgment of the Circuit Court of St. Clair County is reversed.

Reversed.

KASSERMAN, P. J., and HARRISON, J., concur.